# SUPREME COURT.

JAMES C. AYER *et al.*, respondents, agt. WILLIAM A. KOBBE *et al.*, appellants.

1.  Where, under a lease, it was contracted between lessor and lessees that the former should, if the latter so desired, put in an efficient steam hoisting apparatus, for the use of which the lessees should pay twelve per cent per annum on the cost of the same, on the usual quarter days for the payment of rent, and keep the same in repair, and where there was at the time on the premises (which were a large five-story store fifty feet front, in the business part of the city) an open hatchway, which extended through every floor, from the top to the sub-cellar, the presumption of law in the absence of any stipulation to place said steam hoisting apparatus in another part of the building would be that the parties meant and intended by their said agreement to place said steam hoisting apparatus in said open hatchway.

2.  Consequently when the tenant gave notice of such election to have the said steam hoisting apparatus so put in, it was the duty of the landlord to put the same in said opening and nowhere else, and if the tenant resisted him by injunction, such injunction should be dissolved, even though such erection there would seriously obstruct the only entrance to the defendant's portion of the building.

3.  Nor were the rights and duties of the lessor in this regard at all changed by the sub-letting of a portion of the premises to these defendants and of the remaining portion to other sub-tenants.

4.  Where the tenant procured such injunction, and pending a motion to dissolve it a new agreement was entered into between the landlord and tenant, in which it was mutually stipulated that the work upon the steam hoistway should be suspended until a new stairway and entrance should be provided for the defendants and made ready for use, and the latter undertook and promised to pay the rent for such apparatus from and after 23d March of the same, together with such new entrance and stairway, should be completed within a reasonable time, in the construction of the words " reasonable time " the referee held that they must be governed by the fact that another sub-tenant occupying the first floor refused to permit the landlord to open such new entrance through his

premises until he was paid therefor, and that the time spent in negotiat-
ing with such adverse tenant, and in effecting such consent from him, a
period of several months, did not create an unreasonable time. *Held*,
erroneous.

5. The referee also allowed the twelve per cent rent on the cost of the
steam hoistway from the 23d March, although the same was not com-
pleted under the contract of 19th March until the following October.
*Held*, erroneous, and that the same should not have been allowed.

6. The other damages sustained by the tenant by the non-completion of
the steam hoistway and the furnishing of a new entrance within said
time were rejected because they were not matters of counter-claim or
recoupment to the unpaid rent reserved by the lease, and for the recov-
ery of which the suit was brought.

7. The court, instead of granting a new trial absolutely, gave the plain-
tiffs the option of deducting said rent at the rate of twelve per cent per
annum on the cost of the steam hoistway for and during the seven
months from the 23d March, and on their stipulating to deduct same,
affirmed the judgment with costs of the appeal to the appellants.
MONELL, J., *dissenting*, maintained that the defendants' damages, sus-
tained by them by the non-completion of the said steam hoistway
within a reasonable time, were damages for the breach of the same con-
tract, and therefore within the definition of counter-claim (*Code*, § 150),
and the referee's overruling same was ground for a new trial absolutely.

*Heard at General Term, April,* 1873.

*Before* BARBOUR, *C. J., and* MONELL *and* VAN VORST, *JJ.*

THIS action was brought to recover a balance claimed to be
due from the defendants to the plaintiffs for rent of a portion of
a building, and also for the rent of a certain hoisting machinery
therein.

Upon the trial, it appeared that in November, 1867, the
plaintiff let to Asa D. Dickinson the whole of the store and
premises known as Nos. 87 and 89 Leonard street, at the
yearly rent of $26,000. The lease or agreement to let which,
in effect, operated as a lease, was executed by both parties,
and contained, *inter alia*, the following provision :

" The said Ayer & Co. agree that, in case the lessees shall
so desire, they will put in an efficient steam hoisting appara-
tus in and for the said premises, and in case the same shall be
put in, the said lessees shall pay for the use thereof twelve per
cent per annum on the cost of the same, at the usual quarterly

days for the payment of rent, and keep the same in repair, the usual wear and tear excepted."

After that, and in December, 1867, Dickinson underlet to the defendants all of the said premises which were above the first floor, at the yearly rent of $13,000. By that agreement or lease, Dickinson gave to the defendants the benefit and advantage of the stipulation above mentioned in relation to the hoisting apparatus, and the defendants assumed and undertook to pay the rent therefor to Ayer & Co., the plaintiffs. About the first of February, 1868, the defendants notified the plaintiffs that they desired the hoisting apparatus to be put in, and the latter thereupon procured an engine and machinery for such apparatus, and on the 13th of March, 1868, had so far put it up that it could have been completed within two or three days thereafter; but, on the day last mentioned, they were restrained from proceeding therewith by an order of injunction which had been obtained in an action brought against them by the persons who are the defendants in this action, to restrain them from completing the putting up of the apparatus in the only hall or passage-way through which the occupants of the lofts above the first floor could enter their premises. After that order was served, and probably because of it, an agreement in writing was made on the 19th of March, between the parties to this action, which was also signed by the firm who had contracted to erect the apparatus, as follows:

It is hereby agreed between Messrs. Kobbe, Corlies & Co., of New York, and Thomas F. Burgess & Co. and James C. Ayer & Co., of Lowell, Massachusetts, as follows:

It being inconvenient and injurious to the business of the said Kobbe, Corlies & Co. that the work of erecting the hoistway in the building, numbers 87 and 89 Leonard street, so far as relates to that part of the same in the present entrance, gangway and above the first floor of said building, should be continued till a new stairway and entrance is provided, and the steam hoistway can be at once substituted for the present hand hoistway, the said Kobbe, Corlies & Co. agree

Ayer agt. Kobbe.

that, *if said steam hoistway shall be completed, and a new entrance within a reasonable time, they will consider the work of completing the steam hoistway as completed from and after Monday, the 23d day of March, instant, so far as relates to the covenant in their agreement for a lease to pay for the use of the same at the rate of twelve per cent per annum.*

And if the said Burgess & Co., on suspending the work of erecting said hoistway, in said gangway and above the same, at this time, shall be compelled to return from Lowell to New York, and incur further expense in completing said work than would now be incurred, they, the said Kobbe, Corlies & Co., will pay such increased expense.

The said Kobbe, Corlies & Co., however, hereby require and insist that such new entrance and stairway, as aforesaid, shall be *completed* and made ready for the use of themselves and their customers *before* the work upon such steam hoistway, in and above said gangway and present entrance, shall be commenced.

Dated NEW YORK, *March* 19, 1868.

KOBBE, CORLIES & CO:

J. C. AYER & CO.

(By LUCIEN BIRDSEYE).

THOMAS F. BURGESS & CO.

At the time that agreement was made the firm of Amidown, Lane & Co. had become the lessees, under Dickinson, of the first floor, basement and sub-cellar of the building; and they afterwards refused to permit the plaintiffs to build a new passageway over their portion of the premises unless they were paid $2,500 therefor. About the 17th of October, however, they agreed with the plaintiffs to give their consent to the construction of the rear passageway in consideration of $1,000; and thereupon the plaintiffs built the same, and completed the erection of the hoisting apparatus about the first of November, 1868, being over seven months after the

making of the agreement of March 19th, as above set forth. The plaintiffs claimed to recover the balance of rents upon the building as assignees of Dickinson, and the rent for the hoist-way apparatus by virtue of the agreements. The defendants denied the alleged indebtedness, and counter-claimed for the damages alleged to have been sustained by them by reason of the plaintiffs' failure to complete the hoisting apparatus within a reasonable time. The referee directed a judgment for the entire amount of the plaintiffs' claim, and the case comes here on appeal from that judgment.

D. McMAHON, *for appellants.*
LUCIEN BIRDSEYE, *for respondents.*

BARBOUR, *C. J.*—As there was but one hoistway in the building at the time the lease to Dickinson was executed, and that one extended through every floor from the top to the sub-cellar, it may well be assumed, in the total absence of evidence tending to show the contrary, that both parties to that instrument designed and intended that the steam hoisting apparatus provided for therein should be placed in the hoistway which was already constructed. It is reasonable to suppose that if the parties had contemplated the construction of a new hoistway in another place, they would have said so in the lease, and would also have provided for its cost, location, &c. So long as Dickinson remained the sole lessee, therefore, the lessors not only had the right, but it was their duty to place the hoisting apparatus in the old hoistway, when required to build it. Nor were the rights and duties of the lessors, in this regard, at all changed by the sub-letting of a portion of the premises to these defendants or of the remaining portion of other sub-tenants.

The lessors stood in the same position in relation to all the tenants, collectively, which they occupied in regard to the original lessee, although their duty to erect the apparatus was to be performed upon the requisition of the defendants alone.

It follows, therefore, that when the injunction was obtained the plaintiffs had a perfect right to complete the erection of the hoisting apparatus in the old hoistway, although such erection there would seriously obstruct the only entrance to the defendants' portion of the building.

The latter ought, perhaps, to have foreseen all that, and provided for a new entranceway in their lease from Dickinson. It is sufficient to say, however, that the plaintiffs were *not bound to do it by their lease.*

But the agreement of the 19th of March materially modified the provisions of the original lease touching the hoisting apparatus and essentially changed the relative position of the parties. By that agreement it was, in effect, mutually stipulated that the work upon the hoisting apparatus should be suspended until a new stairway and entrance should be provided for the defendants and made ready for use, and the latter undertook and promised to pay the rent for such apparatus from and after the 23d of March if the same, together with such new entrance and stairway, should be completed within a *reasonable time.*

It is important to consider, therefore, what the parties understood by those words of limitation, "reasonable time," in the new agreement.

The referee was quite right in holding, as he did, that the intention of the parties in this matter was to be gathered from all the circumstances bearing upon the subject under which they contracted. But he appears to have erred in assuming that, at the time the agreement was made, the parties contemplated the necessity of a purchase by the plaintiffs, from the tenants of the ground floor, of the right to construct a new passageway to the premises of the defendants, and that negotiations for such purchase were carried on until October. For, not only is that assumption unsupported by the evidence in the case, but the testimony of the witnesses clearly shows that both the plaintiffs and the defendants believed, when the contract was made, and until long afterwards, that Ayer &

Co. had a legal right to construct such passageway, irrespective of any objection or consent on the part of Amidown & Co. The defendant Kobbe testified that he did not know when the agreement of the 19th of March was entered into; that the contemplated new entrance could not be got except by consent of Amidown; nor does the witness so understand it; and he knew nothing whatever of subsequent negotiations between Ayer & Co. and Amidown.

Mr. Amidown testified that frequent discussions were had between Ayer & Co. and himself prior to March, 1868, which were continued up to October, in which Ayer & Co. claimed that they had a legal right to construct a new passageway for the defendants over the premises of Amidown & Co., and would assert that right by force if necessary; and the latter denied such right, and that no offer of a money compensation for permission to construct such entranceway was made to Amidown & Co. previous to October, 1868, when they granted the right. Mr. Birdseye, one of the counsel for the plaintiffs, testified that he frequently and almost weekly saw and conversed with Amidown & Co. and their counsel between March and October touching the claims of those parties; that during those interviews he told Amidown that he should advise his clients to go on and put in the new entranceway; and Amidown said he would resist such attempt with a strong hand; and that during all that time he "never heard of any such thing as that Mr. Amidown would consent to take money for allowing the doorway there;" that he did not hear of any such thing being talked about or negotiated for till just about the time when the agreement of October 17, 1868, was entered into, and that the subject of his frequent discussions with Amidown & Co. and their counsel was, not a money compensation, but the legal rights of Amidown & Co. and the plaintiffs respectively. Mr. Crosby, the law partner of the last mentioned witness, testified, substantially, to the same effect; and so did Mr. Ely, one of the plaintiffs.

It appears from the evidence, therefore, that the parties

to the agreement of the 19th of March did not, nor did either of them, contemplate that a purchase of the right to construct the new entranceway by the plaintiffs would be necessary to enable them to perform that act and erect the hoistway apparatus, and that no considerable portion if any part of the seven months which elapsed between the making of the agreement of March and the final completion of the work was employed by Ayer & Co. in negotiating for the right to construct the contemplated new entranceway; and it follows that his conclusion, based upon the contrary hypothesis, that the entranceway and apparatus were constructed within a reasonable time after the making of the contract, and that the plaintiffs were therefore entitled to recover rent for the apparatus between the 23d of March, 1868, and the final completion of the hoisting apparatus, was erroneous.

The claim of recoupment on the part of the defendants for damages because of the failure of the plaintiffs to construct the apparatus within a reasonable time after the making of the agreement of the 19th of March, does not appear to be established by the evidence.

The agreement, in effect, prohibited them from erecting the apparatus unless they also furnished the defendants with a new entranceway, and it did not require the plaintiffs absolutely to furnish such entranceway, but it was left by the contract wholly optional with them.

The error of the referee, therefore, only affects the rights of the parties in so far as concerns the extent of the plaintiffs' claim, and that ought to be reduced by deducting from the judgment the amount allowed by the referee for the rent of the hoisting apparatus, from the 23d of March to the time when it was completed and ready for use. If the plaintiffs consent to make that reduction, the judgment, so modified, should be affirmed, with costs of this appeal to the defendants; if not, the judgment should be reversed, the report of the referee and the order of reference vacated, and a new trial ordered, with costs to abide the event.

Ayer agt. Kobbe.

It may be added, that the decision of the referee touching the sufficiency of the apparatus cannot properly be disturbed, and he appears to have committed no substantial error in the conduct of the trial.

VAN VORST, J., concurred.

MONELL, J.—I concur with the chief justice, that the entranceway was not constructed within a reasonable time; that the failure to do so was a breach of the plaintiffs' agreement with the defendants, and that the plaintiffs should not recover rent therefor for any period anterior to its full completion.

But I think the chief justice is in error in holding that the damages which the defendant claims to have sustained, by reason of the breach of the contract by the plaintiffs, is not the subject of counter-claim or recoupment. They were damages for the breach of the *same* contract, and, therefore, within the definition of counter-claim (*Code*, § 150).

As the referee determined that the work was done within a reasonable time, he necessarily overruled the entire defense, as well the counter-claim as that the plaintiffs should have no rent for the entranceway.

It is not necessary, therefore, to look at the evidence of damage. The conclusion of the referee, as a matter of law, overruling the counter-claim on the ground that the work was done in a reasonable time, having been erroneous, it is to be assumed that he did not overrule it as being unsupported by evidence.

I think the judgment should be set aside, order of reference vacated and new trial granted, with costs to the appellant to abide event.